UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CT-3137-BO

| STANLEY EARL CORBETT, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| G.J. BRANKER, et al., | ) | |
| Defendants. | ) | |

On July 28, 2010, plaintiff, a state inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983.[1] Defendants G.J. Branker, Captain Waddell, and Lieutenant Warren are before the court with a motion for summary judgment. Plaintiff responded, and the matter is ripe for determination.

i.   Facts and Allegations

Plaintiff alleges that since October 19, 2008, he has been writing and encouraging other inmates to write grievances.[2] (Compl., IV. Stmt of Facts) On April 28, 2009, he wrote a grievance complaining about Officer McDaniels, a staff member at Central, sexually harassing him in the shower. (Id.) Plaintiff alleges that he had submitted several other grievances complaining that Sergeant Adino's staff was generally harassing him. (Id.) Plaintiff alleges

---

[1]Stanley Earl Corbett currently has five active cases in this district; Corbett v. Branker, et al., 5:10-CT-3093-BO (Filed 6/10/10); Corbett v. Branker, et al., 5:10-CT-3135-BO (Filed 7/26/10); Corbett v. Branker, et al., 5:10-CT-3137-BO (Filed 6728/10); Corbett v. Branker, et al., 5:10-CT-3147-FL (Filed 8/05/10); and Corbett v. Branker, et al., 5:10-CT-3185-FL (Filed 10/14/10).

[2]October 19, 2008, is the date Corbett alleges an incident occurred which is the subject of a separate suit.

constitutional violations arising from writing grievances and encouraging other inmates to write grievances as well. (Id.) He states he has been disciplined for writing grievances. (Id.)

Plaintiff further alleges that he gave Sergeant Andino several grievances concerning his mail, but the grievances were never processed. (Id.) Plaintiff claims that defendants' alleged illegal conduct has caused him mental and emotional distress for which he is currently taking Zoloft. (Id.) He also claims defendants' alleged conduct has caused him to be "cut off" from communicating with his family and friends. (Id.) Plaintiff asserts defendants Branker and Warren knew of the illegal conduct and failed to "fix" the problem, thereby, allowing the alleged conduct to exist. (Id.)

Stephen Waddell and Thurman Warren, Jr. provided affidavits which help to sort out the facts. (Mem. in Supp. of Summ. J., Attch. 1 and 2) On May 6, 2009, Assistant Lindsay Stover received a letter written by plaintiff addressed to the Director of Prisons. (Id., Waddell Aff. ¶ 4.) In the letter, plaintiff alleged that he had been sexually harassed in the shower by Correctional Officer McDaniels, a female officer. (Id.) Plaintiff accused Officer McDaniels of staring at him while he showered and speaking to him in a highly inappropriate and sexual way. (Id.)

Because of the nature of the allegations, defendant Waddell was assigned to conduct a Prison Rape Elimination Act ("PREA") investigation. (Id.) Defendant Waddell has been specially trained to conduct PREA investigations and has been conducting these types of investigations since 2007. (Id. ¶ 2) On May 7, 2009, defendant Waddell tried to talk with plaintiff about the alleged actions of the staff member, but plaintiff refused to talk to defendant Waddell or to provide defendant Waddell with a written statement. (Id. ¶ 5) Plaintiff confirms that he would not speak to defendant Waddell, however, he states he did not refuse to speak to

2

defendant Waddell, but wrote a grievance about the incident and did not need to speak to defendant Waddell. (Compl., IV. Stmt. of Facts)

In investigating plaintiff's allegations, defendant Waddell checked the activity log and discovered that Officer McDaniels was not conducting showers in plaintiff's unit on May 18th. (Id. ¶ 6) Despite this information, Defendant Waddell also spoke with Officer McDaniels. (Id. ¶ 7) Officer McDaniels denied sexually harassing the plaintiff. (Id.) She told defendant Waddell that she always speaks professionally when addressing plaintiff and that she always asks inmates if they are dressed before she approaches them in the shower. (Id.) Officer McDaniels also said that plaintiff had a history of masturbating in front of female staff members. (Id.)

Defendant Waddell checked plaintiff's disciplinary history and found that plaintiff had at least twenty-two disciplinary offenses for masturbation. (Id. ¶¶ 7, 8, Ex. A) As a result of his investigation, defendant Waddell concluded that plaintiff's allegations were without merit, unfounded and did not occur. (Id. ¶ 9) After defendant Waddell's report was approved by DOC's regional director, plaintiff was charged with an A-18 offense, knowingly making "to any person a false oral or written allegation about a staff member that, if true, could expose that the staff member to criminal liability" and an A-98 offense, deliberately providing "false and/or misleading information to staff during an investigation related to any offense" in the A classification. (Ans. Ex. A.) Plaintiff was found guilty of committing both offenses at the disciplinary hearing. On appeal, the Chief Disciplinary Officer upheld the A-18 conviction and dismissed the A-98 conviction because A-18 covered both offenses. (Id.)

As for the mail claim, defendant Warren had inmates complain to him that their mail was being delivered to other inmates. (Warren Aff. ¶ 4) Upon defendant Warren's receipt of these

3

complaints, he instructed supervisors and staff of the problem to insure that the mail was being delivered to the correct inmate. (Id.) Defendant Warren does not know of anyone that has tampered with plaintiff's mail. (Id. ¶ 5)

ii. Legal Discussion

    a. Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A trial court reviewing a summary judgment motion should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. See Matsushita, 475 U.S. at 587.

    b. Grievances and Retaliation

A state grievance procedure does not confer a substantive right upon inmates. Thus, the alleged failure of detention officials to properly handle plaintiff's grievance forms does not raise an actionable claim under § 1983. See Daye v. Rubenstein, 417 Fed. App'x 317, *2 (4th Cir.

4

2011) (unpublished); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Therefore, any claims arising out of his grievances do not state a claim.

Turning to the retaliation issue, such claims by prison inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir.1994). "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir.1999). The court will assume without deciding that the retaliation is attached to some type of due process claim rather than the grievance procedure and shall continue its discussion.

Here, however, the facts show that plaintiff was not retaliated against by reporting the alleged sexual assault. In fact, the assault was investigated and it was determined the event did not occur. Plaintiff was asked to participate in the investigation, but by his own account chose not to. Plaintiff was not disciplined for reporting the alleged assault, but rather for making a false report.

Lastly, the court notes that in his action, Corbett v. Branker, et al., 5:10-CT-3093-BO (Filed 6/10/10), "[p]laintiff alleged he is now taking the anti-depressant Zoloft as a result of Defendants' actions [on October 19, 2008] However, plaintiff's medical records show that prior to the October incident, plaintiff was already taking an anti-depressant." (Order dated 1/26/2012 at D.E. #50 in Corbett v. Branker, et al., 5:10-CT-3093-BO) In this case, plaintiff alleges the same thing, that because of the incidents now before the court he is taking Zoloft. However, it is

5

clear, plaintiff was already taking anti-depressants before the occurrence of any of the incidents before the court today.

    c.    Mail

Plaintiff argues that defendants have mishandled his legal and personal mail. First, plaintiff has a right to reasonable access to state and federal courts and to communicate with attorneys. See, e.g., Ex Parte Hull, 312 U.S. 546, 549 (1941); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978) (per curiam). Legal mail generally may not be opened outside of the presence of the prisoner-addressee. Wolff v. McDonnell, 418 U.S. 539, 578 (1974). However, in order to state a claim for denial of access to the courts, the inmate must show actual injury or that defendants' conduct hindered his efforts to pursue a legal claim or show actual harm by the opening. See, e.g., Lewis v. Casey, 518 U.S. 343, 351–54 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc); American Civ. Liberties Union v. Wicomico County, 999 F.2d 780, 785-86 (4th Cir. 1993). Further, isolated incidents without negative consequences to plaintiff do not constitute a constitutional deprivation of one's rights. See, e.g., Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (occasional accidental opening of legal mail does not state of claim of the denial of one's right to the access of court). "[P]rison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action." Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998). In order to show actual injury, "a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." Id. at 1290-91 (citations omitted).

6

Plaintiff has failed to show any harm to any legal matters because of the alleged mail incident or incidents regarding his legal mail. Plaintiff only makes a blanket assertion from which this information can be surmised. There is no evidence that plaintiff in fact has had legal mail confiscated, but rather there is evidence that some inmates' mail was misdirected. Certainly there is no indication that any injury has resulted.

Secondly, the court shall review the mail claim in that it relates to personal mail. While prisoners and detainees have some First Amendment rights in both receiving and sending mail, it is clear that prison officials may place reasonable restrictions on these rights. See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989); Pell v. Procunier, 417 U.S. 817, 822 (1974); Bell v. Wolfish, 441 U.S. 520, 544-52 (1979). ). In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail. See Thornburgh, 490 U.S. at 413.

In order to maintain prison security and to check for contraband, prison officials may, pursuant to a uniform and evenly- applied policy, open an inmate's incoming mail. See Wolff v. McDonnell, 418 U.S. 539, 574 -77 (1974); Bumgarner v. Bloodworth, 768 F.2d 297, 301 (8th Cir.1985) (per curiam). Detention officers may also open and read outgoing general mail. Rodriquez v. James, 823 F.2d 8, 11-13 (2nd Cir. 1987); United States v. Felipe, 148 F.3d 101 (2nd Cir. 1998).

Under these standards, the allegations of the non-legal mail issue fail to state a constitutional claim. Plaintiff's allegations do not focus on the policy over mail, but on the mix up in delivery of the mail. The incidents appear to have been done inadvertently and to have

7

been corrected upon notice of the error. Likewise, there is simply no evidence before the court that the mail mix up was done as a form of retaliation, but simply inadvertently.

iii. Conclusion

Fro the above stated reasons, summary judgment for defendants G.J. Branker, Captain Waddell, and Lieutenant Warren is GRANTED (D.E. # 18).

SO ORDERED, this the 6 day of February 2012.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE